Terry W. VAUGHN, Plaintiff,

v.

Kermit W. KERLEY, Lourdes Boutista, Betty Smithers, Emile L. Baudoin D'Ajoux, Harry K. Singletary, Defendants.

No. 94–1791–Civ–T–17C.

United States District Court, M.D. Florida, Tampa Division.

Aug. 7, 1995.

---

Terry W. Vaughn, Hardee Correctional Institution, Bowling Green, FL, pro se.

Amanda P. Wall, Fla. Dept. of Legal Affairs, Hollywood, FL, for Kermit Kerley, Betty Smithers, Emile L. Baudoin D'Ajoux, Harry K. Singletary, Jr.

### ORDER

KOVACHEVICH, District Judge.

*Pro se* prisoner Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on November 9, 1994. Plaintiff names as De-

fendants Kermit Kerley, Chief Administrative Officer of Hardee Correctional Institution (HCI); Emile Baudoin d'Ajoux, investigator for Correctional Medical Authority; Harry K. Singletary, Chief Administrative Officer for the Department of Corrections; and Betty Smithers, nurse at HCI.[1] Plaintiff was incarcerated at Hardee Correctional Institution at the time the alleged events occurred.

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.

In support, Plaintiff claims that:

8. At approximately 10:00 p.m. on October 6, 1993, Plaintiff declared a medical emergency because he was suffering from acute gastrointestinal distress, and he was escorted to the HCI Medical Clinic by Sgt. Johnson.

9. When he arrived at the Clinic, Plaintiff explained his ailment to Defendant Smithers. However, defendant Smithers advised Plaintiff that only matters "of life and limb" are treated outside regular "Sick Call" hours, and he was refused any treatment whatsoever.

10. Although Plaintiff had a history of gastrointestinal problems and advised defendant Smithers he was in great pain, she never even reviewed Plaintiff's medical file prior to refusing to treat him.

11. As direct and proximate result of defendant Smithers' deliberate indifference, Plaintiff suffered needlessly until Inmate Warren Cooper provided him with some Pepto–Bismol, which eventually relieved the pain.

12. On October 7, 1993, plaintiff filed a formal Grievance of a medical nature pursuant to Rule 33–20.008, Fla.Admin.Code (1993), with defendant Kerley, complaining of defendant Smithers refusal to treat him, and requesting the posting of a written "criteria for treatment outside of Sick Call Hours" so that prisoners would know and understand the HCI Policy. Plaintiff further requested that medical problems,

such as those experienced by Plaintiff on October 6, 1993, be accounted for in the treatment criteria.

13. On October 22, 1993, defendants Boutista and Kerley responded that defendant Smithers appropriately evaluated him and that "it was determined that [he] did not meet the status for emergency treatment." Plaintiff was referred to "the Emergency Medical Procedures ... in the Institutional Operations Manual in the Library."

14. The procedures referred to by Defendants Kerley and Boutista is the HCI Institutional Operating Procedure # 3.05.029, which states: "1. INMATE WALKS IN TO CLINIC REQUESTING HEALTH CARE. 2. AN R.N., L.P.N., OR C.M.T.C. ASSESS THE INMATE'S HEALTH COMPLAINT. THE INMATE'S MEDICAL RECORD WILL BE REVIEWED AT THIS TIME." However, this cryptic procedure was not even observed by defendant Smithers before plaintiff was turned away from the Clinic in obvious pain. Defendants Boutista and Kerley failed to investigate plaintiff's complaint at all.

15. Defendant Kerley is responsible for instigating Policies and Practices to reduce Inmate access to health care at HCI. These Policies are intentionally designed to deter requests for treatment by placing needless restrictions on treatment and making all requests for treatment unduly burdensome. Defendant Kerley places unnecessary restrictions on the Healthcare personnel at HCI, forcing them to provide services below the generally accepted standard of care. In fact, defendant Boutista was forced to resign as Chief Health Officer of HCI because defendant Kerley insisted on placing unreasonable restrictions on her ability to deliver healthcare to the prisoners of HCI.

16. On October 27, 1993, Plaintiff filed a timely Grievance Appeal, pursuant to rule 33–29.007, Fla.Admin.Code (1993), of the denial of his Grievance of a medical nature, to defendant Singletary.

---

1. Plaintiff also named Lourdes Boutista, medical doctor at Hardee Correctional Institution as a Defendant. Defendant Boutista was dismissed on May 23, 1995 for lack of service.

17. On February 4, 1994, defendant Baudoin d'Ajoux, issued a curt response denying Plaintiff's Grievance appeal. However, the investigation of Plaintiff's complaint was cursory at best. Typically, an Agent of the Correctional authority places a telephone call to the Healthcare provider at the prison and accepts their unilateral explanation of events. Defendant Baudoin d'Ajoux then responds accordingly. The Correctional Authority is merely a Rubber-stamp for the DOC, and an enforcement farce.

18. The "life and limb" criteria for emergency medical treatment exists to this day at HCI, and is an inherently indifferent policy toward the medical treatment of prisoners. Prisoners are not Doctors. Indeed, they frequently suffer from intellectual handicaps. Yet, it is well-established that many life threatening ailments initially manifest themselves as more trivial conditions. In fact, Dr. Roberts, Chief of the Trauma Unit at Chicago's Cook County Hospital stated during a National Public Radio Broadcast on August 21, 1994, that the only efficacious choice would be to err on the side of caution by treating all complaints by laymen as serious. It makes infinitely more sense to treat what ultimately turns out to be indigestion, than to ignore a budding heart attack. Hardee's emergency treatment policy is just the opposite.

19. Rule 33B–1.001, Fla.Admin.Code (1994) requires that adequate standards of healthcare are maintained at all DOC Institutions, and it is defendant Baudoin d'Ajoux's duty to see that this policy is enforced.

20. Defendant Baudoin d'Ajoux failed to enforce Rule 33B–1.001 on HCI and is, thus, deliberately indifferent to Plaintiff's serious medical needs. Moreover, his failure to properly review Plaintiff's medical record is typical of his deliberate indifference to his responsibility as a watchdog of DOC health care Delivery.

21. Rule 33–3.002(16), Fla.Admin.Code (1994), requires that all State prisoners be furnished with proper medical care and medicine, and defendant Singletary has duty to see that this policy is carried out, as does defendant Kerley.

22. Defendant Singletary knew or should have known of the inherently indifferent emergency Sick Call policy at HCI, yet he failed to take any remedial action.

23. As a direct and proximate result of defendant's deliberate indifference to Plaintiff's serious medical needs, Plaintiff has suffered needlessly and continues to suffer unnecessary pain.

24. The actions or inactions of the defendants violates Plaintiff's Eighth Amendment Right to be free from cruel and unusual punishment.

Complaint, pp. 8a–8e (Some changes made for readability).

Plaintiff seeks a declaratory judgment that "plaintiff has a constitutional right to medical treatment at any time, when he is in pain and it is possible for the pain to be relieved." He also seeks an injunction "directing the defendants to refrain from placing unreasonable restrictions on medical treatment, such as limiting emergency medical treatment to matters of 'life and limb.'" He also requests compensatory and punitive damages, and "such other relief as the Court deems just and proper."

On February 15, 1995, Defendants Kerley, Singletary and d'Ajoux filed a motion to dismiss (Doc. No. 14). On March 30, 1995, Defendant Smithers filed a motion to dismiss (Doc. No. 18). Plaintiff, after instruction from the Court, has responded to both motions to dismiss.

In his responses, Plaintiff claims that he continues to suffer pain from a gall-bladder condition. He submitted grievance forms and affidavits of fellow inmates in support of his claim of deliberate indifference on the part of Defendants. The essence of the content of the supporting documents is that Plaintiff experiences pain that can be relieved by patent medicines such as Pepto–Bismol or Maalox (an antacid) and Ibuprofen. Plaintiff's grievances show that he has been treated for his gastrointestinal distress. However, because medical personnel, includ-

ing Defendant Smithers and Nurse Miller[2] found that Plaintiff's condition did not constitute an emergency, Plaintiff was referred to sick call for his treatment.

### DEFENDANTS' ALLEGATIONS

Defendants claim that Plaintiff is attempting to hold some of the Defendants liable under the theory of *respondeat superior,* that Defendants are entitled to Eleventh Amendment and qualified immunity, and that Plaintiff has failed to allege facts to support a claim of cruel and unusual punishment under the Eighth Amendment.

### STANDARD FOR DISMISSAL

■■■ In determining whether to grant a Fed.R.Civ.P. 12(b)(6) motion, the Court considers the allegations in the complaint. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to Plaintiff and its allegations are taken as true. 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1357 (1969). A motion to dismiss will be denied unless it appears beyond all doubt that Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Luckey v. Harris,* 860 F.2d 1012, 1016 (11th Cir.1988), *reh'g denied en banc,* 896 F.2d 479 (11th Cir.1989), *and cert. denied,* 495 U.S. 957, 110 S.Ct. 2562, 109 L.Ed.2d 744 (1990). In the case of a *pro se* action, moreover, the Court should construe the complaint more liberally than it would formal pleadings drafted by lawyers. *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980) (per curiam).

After reading Plaintiff's complaint in a liberal fashion, the Court finds that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Therefore, Defendant's motion to dismiss will be granted.

### DISCUSSION

### ELEVENTH AMENDMENT IMMUNITY

■■■ A suit against a government official in his official capacity is really a suit against the state. *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

> [S]tate officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals.

*Hafer v. Melo,* 502 U.S. 21, 26, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991) (citing *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45).[3] Defendants in the present case are state employees. Therefore, they enjoy Eleventh Amendment immunity from suit for damages in their official capacity. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (citations omitted).

■■■ However, state officers sued in their individual capacities are "persons" within the meaning of section 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under section 1983 solely by virtue of the "official" nature of their acts. *Hafer,* 502 U.S. at 31, 112 S.Ct. at 365.

### EIGHTH AMENDMENT CLAIMS

Plaintiff claims that Defendants denied him adequate medical care when they refused to treat his late-night visit to the medical clinic as a medical emergency under the present policy at HCI. Plaintiff claims that his digestive distress was a medical emergency. Defendant Smithers, who saw Plaintiff at the time he visited the clinic, and who was told by Plaintiff that he had a history of gastrointestinal problems, diagnosed his condition as non-emergency in nature and refused to treat him on an emergency basis.

■■■ In assessing Plaintiff's claims of cruel and unusual punishment, the Court

---

2. See Plaintiff's Supplemental Response to Motion for Partial Dismissal, Document Number 19, Inmate Request dated January 2, 1995.

3. In *Hafer,* the Defendant argued that the Eleventh Amendment bars personal capacity suits against state officials in federal court.

must consider "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). Cruel and unusual punishment, however, only consists of that punishment which involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859, *reh'g denied,* 429 U.S. 875, 97 S.Ct. 197, 50 L.Ed.2d 158 (1976). Deliberate indifference to serious medical needs of prisoners constitutes "the unnecessary and wanton infliction of pain." *Id.*

The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of the defendants. The Supreme Court has recently had cause to consider the common law meaning of "wanton" in some detail:

> "Wanton means reckless—without regard to the rights of others.... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure." 30 American and English Encyclopedia of Law 2–4 (2d ed. 1905) (footnotes omitted).

*Smith v. Wade,* 461 U.S. 30, 39–41 n. 8, 103 S.Ct. 1625, 1631–32 n. 8, 75 L.Ed.2d 632 (1983).

▮▮▮ Medical treatment, or lack thereof, violates the Eighth Amendment only if the treatment involves something more than a medical judgment call, an accident, or an inadvertent failure [to provide medical care], *Murrell v. Bennett,* 615 F.2d 306, 309–10 (5th Cir.1980). Instead treatment must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir.1986).

▮▮▮ A difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *See Massey v. Hutto,* 545 F.2d 45 (8th Cir.1976). Although deliberate indifference to a serious medical need is a cognizable section 1983 claim, *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), not all complaints concerning medical treatment are actionable:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.* at 106, 97 S.Ct. at 292 (footnote omitted).

▮▮▮ Plaintiff Vaughn has not met the *Estelle* and *Rogers'* standards. Medical personnel evaluated him when he went to the clinic complaining of gastrointestinal pain. As Plaintiff claims, prisoners are not doctors. Consequently, medical personnel evaluate the medical needs of prisoners, not the prisoners themselves. Plaintiff described his history of gastrointestinal distress to Defendant Smithers. She evaluated his medical needs. Defendant Smithers' determination that Plaintiff's condition did not constitute an emergency is supported by the fact that Plaintiff's pain was relieved by his taking Pepto–Bismol. Furthermore, Plaintiff has not claimed that he was prevented from receiving further medical care relative to his gastrointestinal problem.

▮▮▮ A medical condition that was cured by Pepto–Bismol did not constitute a serious medical problem or a medical emergency. Defendant Smithers' decision not to treat Plaintiff's complaint as a medical emergency did not rise to the level of deliberate indifference under the *Estelle* standard. In this case, Plaintiff has alleged *at most* negligence or medical malpractice, the proper forum for

which is the state court. *See Estelle*, 429 U.S. at 107, 97 S.Ct. at 292–93.

## RESPONDEAT SUPERIOR AND CAUSAL CONNECTION

Plaintiff claims that he filed a grievance appeal on October 27, 1993 with Defendant Singletary.[4] Further, he alleges that Defendant Singletary had a duty to carry out the policy that inmates be furnished with proper medical care.

He claims that Defendant Kerley is responsible for reducing access to health care by inmates, although he does not elaborate on the way in which he is responsible. He does not allege that Defendant Kerley was involved in Plaintiff's medical claim relative to October 6, 1993. Complaint, p. 8c.

Plaintiff contends that Defendant d'Ajoux did not do a thorough job of investigating his grievance appeal.

### *Respondeat Superior*

■ It appears that Plaintiff is attempting to hold Defendants Singletary and Kerley liable under the theory of *respondeat superior*. *Respondeat superior*, without more, does not provide a basis for recovery under section 1983. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Harvey v. Harvey*, 949 F.2d 1127, 1129 (11th Cir.1992) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir.1990). *See Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Pacific Mutual Life Insurance Company v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991); *Pembaur v. City of Cincinnati, et al.*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

### *Causal Connection*

■ Although personal participation is not specifically required for liability under section 1983, there must be some causal connection between the defendant named and the injury allegedly sustained. *Rivas v.*

*Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir.1986) (per curiam).

The Eleventh Circuit has stated that:

Like municipalities, supervisors cannot be held liable for the acts of employees solely on the basis of *respondeat superior*. *McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1388 (11th Cir.1981), *cert. denied*, 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). Supervisory liability is not limited, however, to those incidents in which the supervisor personally participates in the deprivation. *Goodson v. City of Atlanta*, 763 F.2d 1381, 1389 (11th Cir.1985); *Wilson v. Attaway*, 757 F.2d 1227, 1241 (11th Cir.1985); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir.1976). There must be a causal connection between the actions of the supervisory official and the alleged deprivation. *Wilson*, 757 F.2d at 1241; *Henzel v. Gerstein*, 608 F.2d 654, 658 (5th Cir.1979). This causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action. *Wilson*, 757 F.2d at 1241; *Sims*, 537 F.2d at 832.

*Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir.1985).

■ Even if Plaintiff had somehow alleged facts to support a claim of an Eighth Amendment violation, Plaintiff has not alleged facts to show that there is any causal connection between the medical personnel's assessment of Plaintiff's medical claim as not being an emergency and Defendants Singletary, Kerley, and d'Ajoux.

Neither Defendant Singletary nor Defendant Kerley are medically trained and had nothing to do with the medical assessment. Plaintiff's bald allegation that Defendant d'Ajoux did not thoroughly investigate his claim does not support a section 1983 claim.

## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff claims that the policy regarding emergency medical care at HCI is unconsti-

---

**4.** On February 4, 1994, Defendant Baudoin d'Ajoux issued a response denying Plaintiff's grievance appeal that Plaintiff filed with Defendant Singletary.

tutional and that this Court should grant declaratory and injunctive relief that would overrule the *Estelle* standard. Clearly, a declaratory ruling by this Court that "plaintiff has a constitutional right to medical treatment at any time, when he is in pain and it is possible for the pain to be relieved" would overrule the deliberate indifference standard adopted by the United States Supreme Court in *Estelle* and Defendants could be potentially liable under section 1983 every time a prisoner had the slightest ailment.

As Plaintiff states, Institutional Operating Procedure # 3.05.029 sets out the procedure for receiving emergency medical care: "1. INMATE WALKS IN TO CLINIC REQUESTING HEALTH CARE. 2. AN R.N., L.P.N., OR C.M.T.C. ASSESS THE INMATE'S HEALTH COMPLAINT. THE INMATE'S MEDICAL RECORD WILL BE REVIEWED AT THIS TIME."

Plaintiff claims that the procedure unreasonably restricts medical treatment and he seeks an injunction "directing the defendants to refrain from placing unreasonable restrictions on medical treatment, such as limiting emergency medical treatment to matters of "life and limb."

### Interference with Matters of Prison Administration

■ Federal courts are normally reluctant to interfere with matters of internal prison administration. *Hooks v. Kelley,* 463 F.2d 1210, 1211 (5th Cir.1972); *see also Newman v. Alabama,* 683 F.2d 1312, 1320 (11th Cir.1982). As the Supreme Court stated in *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979) (citations omitted):

> [T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

In recognition of the judiciary's deference, the Supreme Court has repeatedly stated:

> Such considerations [of prison administration] are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

*Bell v. Wolfish,* 441 U.S. at 547–48, 99 S.Ct. at 1878–79, quoting *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974); *see Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977).

■ Of course, a policy of judicial restraint does not include failure to take cognizance of prisoners' valid constitutional claims. *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974). "When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." *Id.* at 405–06, 94 S.Ct. at 1807–08.

■ In the setting of a prison, there must be "mutual accommodation" between the penal institution's legitimate needs and goals and the prisoner's retained constitutional rights. *Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1877–78; *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Pell v. Procunier,* 417 U.S. at 822, 94 S.Ct. at 2804, quoting *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). In short, "a prisoner loses only those rights that must be sacrificed to serve legitimate penological needs." *United States v. Lilly,* 576 F.2d 1240, 1244 (5th Cir.1978); *see Pell v. Procunier,* 417 U.S. at 822, 94 S.Ct. at 2804.

■ Thus, in determining whether conditions of confinement are unconstitutional under the Eighth or Fourteenth Amendments, the federal court's task is limited to enforcing constitutional standards rather than the as-

sumption of superintendence of prison administration. *Jones v. Diamond,* 636 F.2d 1364, 1368 (5th Cir.), *cert. dismissed sub nom. Ledbetter v. Jones,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). Prison officials have broad discretion in the area of conditions of confinement. *Williams v. Hoyt,* 556 F.2d 1336 (5th Cir.1977), *cert. denied,* 435 U.S. 946, 98 S.Ct. 1530, 55 L.Ed.2d 544 (1978).

Likewise, Courts would be reluctant to interfere with matters of medical policy absent some evidence that the policy rose to the level of deliberate indifference. The policy at HCI regarding medical emergency treatment does not meet that standard.

For the reasons set out in this opinion, the Court orders:

That Defendants' motions to dismiss (Doc. Nos. 14, 18) are granted. The Clerk is directed to enter judgment for Defendants and to close this case. The Clerk is directed to purge the file of extra service forms.

DONE AND ORDERED.