**Ralph MURRELL, Plaintiff-Appellant,**

v.

**Larry D. BENNETT, Commissioner of Alabama Board of Corrections et al., Defendants-Appellees.**

No. 79–2025.

United States Court of Appeals,
Fifth Circuit.

April 10, 1980.

---

Richard H. Gill, Montgomery, Ala., for plaintiff-appellant.

Mary Jane LeCroy, Jean W. Brown, Asst. Attys. Gen., Montgomery, Ala., for defendants-appellees.

Before GEE, FAY and VANCE, Circuit Judges.

FAY, Circuit Judge:

Ralph Murrell, an inmate of the Alabama State prisons, appeals the district court's grant of summary judgment to the State Board of Corrections and other defendants on his complaint that he was deprived of his civil rights in violation of 42 U.S.C. § 1983 (1976). On review of the record, we find that summary judgment was unseasonably granted in this case. We therefore reverse.

Murrell is serving a life sentence for murder at Alabama's Staton Correctional Center. In the papers he filed pro se, Murrell alleges that on July 14, 1978, during "pills call" at between 5:45 and 6:00 a. m., he reported to the prison clinic because of nausea and dizziness. He claims he was left unattended for over an hour and a half while Mr. Williams, a medical assistant, and Dr. Scaffidi, the prison physician, distributed pills to prisoners on "sick call." Murrell went unattended to the toilet, where he

passed blood and fell to the floor because of dizziness. Other inmates working in the clinic lifted Murrell to his bed, where he began vomiting blood. Murrell claims approximately another hour elapsed before an ambulance arrived to transport him to the local hospital. On arrival at the hospital, he was given over two pints of blood and diagnosed as suffering from a bleeding ulcer. Murrell was discharged from the hospital on July 25 with medical orders for a special bland diet and with a prescription for the drug Tagamet to treat his ulcer. Murrell claims he was not given his medication for almost a week after his return to the prison. He also alleges he was denied the special diet prescribed for him.

In addition to his ulcer problems, Murrell had a prescription for medication to treat a urological disorder, which he also alleges was not dispensed to him for six days after his discharge from the hospital.

Murrell filed his pro se verified complaint on November 8, 1978. As defendants he named Mr. Larry D. Bennett, Commissioner of the Alabama Board of Corrections; Mr. Walter T. Capps, as Warden of Staton Prison;[1] Dr. Sam Scaffidi, the Staton Prison physician; and Mr. Williams, the medical assistant. Murrell alleged that he had been denied necessary medication, treatment, emergency care, and diet in violation of his civil rights under 42 U.S.C. § 1983 (1976). He requested an injunction and damages. The case was referred to a magistrate, and on December 5, 1978, the defendants moved alternatively for dismissal and summary judgment. On December 6, the magistrate ordered submission of all evidence by December 22, for consideration of the motion without oral argument.

With their motion the defendants filed affidavits painting a different picture of Murrell's medical treatment. In his affida-

vit, medical assistant Williams stated that he told Murrell to lie down, that he immediately explained Murrell's complaints to Dr. Scaffidi, and that they both examined Murrell in the ward. Under Dr. Scaffidi's orders, Williams injected Murrell with twenty-five milligrams of thorazine for the nausea. Williams states he advised Murrell not to leave the bed without help and then returned to his duty post, where Williams claims he could view all that was happening in the ward. Nevertheless, one of the ward workers had to report to Williams that Murrell had left his bed, gone to the toilet, and passed out on the floor. Williams states that he and another inmate returned Murrell to his bed where approximately two minutes later Murrell began vomiting. Williams states he sent for Dr. Scaffidi at once, and that Murrell was shipped to the hospital without "any time loss."[2] Williams reports that he personally has always given Murrell "his medication as prescribed or substituted by the doctor." Record at 10–11.

Dr. Scaffidi states in his affidavit that when Murrell came to the clinic complaining of abdominal pain, he was placed in the infirmary "and would be seen as soon as possible." When he began to vomit blood from the ruptured ulcer, an intravenous solution was started and medication given to control vomiting. The doctor states he immediately arranged for ambulance transfer to the hospital. "At no time was there any lost time between the first episode of vomiting and the time he was evacuated by ambulance." *Id.* at 12. As to the medication, Dr. Scaffidi states that many times the prison clinic and Montgomery area druggists have not stocked new drugs prescribed by specialists. Patients are therefore forced to wait four to five days until the medication arrives. During the wait, a

---

1. With the defendants' motion for dismissal and summary judgment, Mr. Capps filed an affidavit stating he was not the warden of Staton on November 8 when the action was commenced. Record at 9a. Murrell claims Capps was warden on July 14 when his ulcer hemorrhaged. *Id.* at 34. The magistrate and district court did not separately discuss whether the

claims against Capps should be dismissed, and we express no opinion on this issue.

2. We note that several of the statements in the defendants' affidavits are conclusory. *See United States v. W. H. Hodges & Co., Inc.*, 533 F.2d 276, 278 (5th Cir. 1976); Fed.R.Civ.Pro. 56(e).

substitute drug is dispensed. Because Murrell's ulcer specialist ordered a new drug, a substitute was administered until the Tagamet arrived. *Id.* at 12–13.

Murrell's prison clinic patient file was also attached to the motion.[3] Besides its information on the events of July 14, it shows Murrell reported to the clinic many times for heart, skin, and urological disorders. Record at 14–26.

On December 12 and 13, about one week after the magistrate's submission order, Murrell filed a request for subpoena duces tecum and subpoena to produce witnesses, and submitted a "Traverse to the Return." The "traverse" indicated areas in which the defendants' affidavits conflicted with the complaint, explained what the subpoenaed testimony and documents would show, and included a motion for appointment of counsel.

On January 10, 1979, the magistrate recommended that the defendants' motion for dismissal be denied, but that their motion for summary judgment be granted. Murrell's requests for subpoenas were denied. His request for counsel was not mentioned. The district court adopted the magistrate's recommendation.

Although summary judgment is a useful device, it must be used cautiously or it may lead to drastic and lethal results. *See Hanson v. Polk County Land, Inc.*, 608 F.2d 129, 130 (5th Cir. 1979); *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 612 (5th Cir. 1967). Summary judgment is proper only when no genuine issue of material fact exists. Fed. R.Civ.Proc. 56(c). The appellees, as initiators of the motion, had the burden of proving the nonexistence of material disputes. *Alabama Farm Bureau Mutual Casualty Co., Inc. v. American Fidelity Life Insurance Co.*, 606 F.2d 602, 609 (5th Cir. 1979).

Upon that showing, Murrell was required to rebut appellees' proof with significant, probative evidence. *Ferguson v. National Broadcasting*, 584 F.2d 111, 114 (5th Cir. 1978). Murrell's burden in resisting the motion is not a heavy one. *Securities & Exchange Commission v. Spence & Green*, 612 F.2d 896, 901 (5th Cir. 1980). The nonmovant can utilize affidavits, depositions, and other discovery devices to outline the areas of conflict.

■ A cursory review of the record shows that the parties here dispute several genuine issues of material fact. The parties differ on when Murrell arrived, whether and for how long he was unattended, when he was given medication, when an ambulance was called, when one arrived, and whether the prison should have had its own ambulance. A dispute exists over why Murrell was denied the Tagamet prescribed for his ulcer. Apparently the parties also dispute whether the medicine for the urological problem was withheld, although Dr. Scaffidi does not state that this drug was unavailable. The parties also dispute whether Murrell receives his special diet. Although the defendants claim Murrell has a special diet card, the affiants had no personal knowledge of whether Murrell actually received the prescribed diet.

To counter the impact of these disputed factual issues, appellees raise *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). They argue that their affidavits and records prove as a matter of law that they were not deliberately indifferent to Murrell's serious medical needs, and that he therefore has no claim under 42 U.S.C. § 1983 (1976). They note that in *Gamble*, the doctors saw the prisoner seventeen times and the authorities lost the prisoner's prescription for four days. 429 U.S.

---

**3.** Murrell's record lists the following for the main day in question:

7–14–78   Thorozene 25 mg. Stat. I.M.

/s/ S.A. Scaffidi

7–14–78   This am. this [patient] came on sick call complaining of nausea and vomiting small particles of food. He was laying in bed and started to vomit large amount of "coffee grind" appearance.

The amount of fluid vomited was ½ of bed pan full. [Blood Pressure] 90/80 8:15 Lactate ringers solution started Dr. Jack Wool at St. Margaret's Hospital notified—St. Margarets Hospital alerted.

/s/ S.A. Scaffidi

Record at 18–19.

at 100, 107, 97 S.Ct. at 289, 292. They claim that because Murrell was seen forty-four times [4] and his medication was unavailable, Murrell's claims, like Gamble's, do not rise to the level of deliberate indifference.

This argument ignores, however, the crucial distinction of the differing sources of the information in these two cases. In *Gamble* the plaintiff's own complaint demonstrated the absence of deliberate indifference. In *Murrell*, statements on the frequency of medical visits and availability of medicine are found in papers submitted by appellees. The complaint in *Gamble* was dismissed for failure to state a claim. In this case, the court denied the appellees' Rule 12 motion for dismissal; the court granted summary judgment.

Once the case is set in its proper procedural context, the fallacy of appellees' argument is apparent. They urge the engrafting of Rule 12 standards onto the case after the judicial officer receives and considers information proper only for Rule 56 motions. Although they urge that their allegations prove conclusively that Murrell does not have a cause of action, in reality their allegations highlight the disputed factual issues here. Whether Murrell can prove deliberate indifference is a question that can be answered only after further factual development.

■ Appellees also assert that Murrell did not meet his burden of rebutting their showing by supplying affidavits or other material evidence.[5] *See Adickes v. S. H.*

*Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Garcia v. American Marine Corp.*, 432 F.2d 6 (5th Cir. 1970).

The absence of documents for Murrell is the very injustice of this case. Indigent prisoners are hampered in their access to the proof necessary to ward off summary judgment. Murrell had no opportunity to provide this information because his unschooled attempts at requesting discovery were nipped in the bud only thirty-two days after the complaint was filed. This court noted in *Alabama Farm* that summary judgment normally should not be granted before discovery is completed. 606 F.2d at 609. Murrell's discovery was never allowed to begin. Murrell asked for subpoenas to discover the time of his arrival at the hospital, the amount of blood he received, the type of ambulance used, and what, if any, substitute medicine was prescribed. Record at 28. Murrell requested subpoenas for witnesses who could testify about the type of diet provided at the prison. *Id.* at 29, 34. Murrell filed a document outlining his arguments and the factual disputes that he would attempt to prove. Murrell filed a motion for appointment of counsel. Although his documents may be inartful, the thrust of his requests was clear: he wanted the chance to show that material disputes did exist.

Pro se claims for relief are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). *See Jackson v. Reese*, 608 F.2d

---

**4.** Although the record does reflect forty-four entries involving examination for various disorders, only nine relate to the ulcer and only four relate to Murrell's urological problem. *Gamble* does not necessarily excuse one episode of gross misconduct merely because the overall pattern reflects general attentiveness. The issue is whether the questioned conduct is cruel and unusual because it involves deliberate indifference, or something more than a medical judgment call, an accident, or an inadvertent failure.

**5.** Neither party discusses whether Murrell's pro se complaint and his "traverse" were affidavits which complied with Rule 56(e). *See Fowler v. Southern Bell Telephone & Telegraph Co.*, 343 F.2d 150, 154 (5th Cir. 1965); *Mercantile Na-*

*tional Bank at Dallas v. Franklin Life Insurance Co.*, 248 F.2d 57, 59 n. 5 (5th Cir. 1957). The traverse and at least part of the complaint arguably are verified. Many of Murrell's statements are obviously within Murrell's personal knowledge and would be admissible at trial. Since the defendants did not object to consideration of these statements, they waived the right to prevent their consideration. *See Munoz v. International Alliance of Theatrical Stage Employees*, 563 F.2d 205, 214 (5th Cir. 1977); *Auto Drive-Away Co. v. Interstate Commerce Comm'n*, 360 F.2d 446, 448–49 (5th Cir. 1966). The statements made within his personal knowledge might raise sufficient genuine issues of material fact to foreclose summary judgment.

159, 160 (5th Cir. 1979). Given the claims and requests in this case, the magistrate and district court should have done more before entering summary judgment. An exclusive list of the available options would be unnecessarily restrictive, but we will detail a few of the possible routes. The court could have appointed an attorney to aid Murrell with his discovery. 28 U.S.C. § 1915(d) (1976). See 42 U.S.C. § 1988 (1976) (fees to prevailing parties in section 1983 actions). Murrell's request for an attorney was evidently overlooked. The court might have treated Murrell's request as a Rule 56(e) motion for continuance pending discovery. The court could have issued the subpoenas Murrell requested. Or the court could have denied the summary judgment at that time and held an evidentiary hearing. See generally Hudson v. Hardy, 134 U.S.App.D.C. 44, 48, 412 F.2d 1091, 1095 (D.C.Cir. 1968).

Summary judgment is a valuable judicial tool. Because its consequences are so severe, however, we must always guard against premature truncation of legitimate lawsuits merely because of unskilled presentations.[6] The district court's judgment is REVERSED.

---

6. We indicate nothing concerning the ultimate merits of any of the pending claims.