**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-41473
_____

LESTER T. PULLEN,

Plaintiff-Appellant,

VERSUS

RANDY VANDERTUIN,

Defendant-Appellee.

_____

Appeal from the United States District Court for the Eastern
District of Texas
(4:97-CV-238)
_____

July 17, 2000

Before DAVIS, JONES and STEWART, Circuit Judges.

DAVIS, Circuit Judge:[*]


Lester Pullen, proceeding *pro se* and *informa pauperis*, appeals

the district court's entry of summary judgment dismissing Pullen's

42 U.S.C. § 1983 civil rights suit against Randy Vandertuin, a

McKinney, Texas police officer, based on qualified immunity.

Pullen alleges that Vandertuin violated his civil rights by using

excessive force while arresting Pullen for violating narcotics

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

laws. Pullen's appeal presents a single issue: whether Pullen has raised a question of material fact sufficient to defeat Vandertuin's motion for summary judgment. For the reasons that follow, we conclude that he has not.

I.

On July 19, 1996, Officer Vandertuin was working undercover on a buy-bust drug operation involving a confidential informant ("C.I."). Vandertuin and other officers wired the C.I. with a body microphone that enabled Vandertuin and the other officers to monitor the C.I. as he drove Pullen and Pullen's two children to a drug rendezvous.

The officers observed Pullen purchasing crack cocaine. After the purchase, Pullen returned to the passenger seat of the vehicle driven by the C.I. and gave some of the narcotics to the C.I. in exchange for forty dollars cash. Observing this transaction, the officers decided to make a traffic stop of the vehicle driven by the C.I..

According to Vandertuin's affidavit, he overheard Pullen advise the C.I. to put the crack in her mouth and swallow. Vandertuin then approached the passenger side of the vehicle, where Pullen was seated, and observed Pullen "with his head down, making suspicious movements with his hands, and [] became concerned that he might be attempting to secure a weapon." Vandertuin states that Pullen refused to exit the vehicle and continued making suspicious

movements with his hands. Thus, "[f]earing for [his] own safety as well as that of my fellow officers, the children in the back seat and the C.I.," Vandertuin opened the passenger door and removed Pullen by this right arm. Vandertuin states that Pullen struggled as he was being handcuffed. During the struggle, Vandertuin observed an unidentified male approach the scene. "Not knowing the intent of this unidentified person, and/or whether such a person might interfere with the arrest of Pullen and jeopardize the safety of those present," Vandertuin "placed [his] foot in the center of Pullen's back at which time another officer came and assisted in hurriedly handcuffing Pullen."

Pullen contests few aspects of Vandertuin's account. In his affidavit, Pullen states only that he was already out of the car when Vandertuin came running up, threw him on the ground, and stomped on him. According to Pullen, Vandertuin stopped stomping to look into Pullen's mouth, stomped on Pullen several more times, again looked in Pullen's mouth, and then took him back to the car.

Pursuant to a magistrate's recommendation, the district court entered summary judgment for Vandertuin, finding that the officer was entitled to qualified immunity. The court found that "it is undisputed that the Plaintiff resisted the Defendant's attempts to handcuff him, and that an unidentified male was approaching the scene, causing the Defendant to be concerned about the possibility of being outmanned by the Plaintiff and the other male." The court

concluded that such circumstances rendered Officer Vandertuin's decisions to place the Plaintiff face down on the ground and to place his foot in the center of Plaintiff's back objectively reasonable.

## II.

We review *de novo* the district court's grant of summary judgment, viewing questions of fact in the light most favorable to the party opposing the motion. Horton v. City of Houston, 179 F.3d 188, 191 (5th Cir. 1999). Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 106 S.Ct. 2548 (1986). Moreover, in prisoner *pro se* cases, courts must vigilantly "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." Murrell v. Bennet, 615 F.2d 306, 311 (5th Cir. 1980).

On appeal, Pullen essentially argues that Officer Vandertuin lied in his affidavit. He contends that Vandertuin did not see a drug deal go down, that he did not resist arrest, that he did not strike his children, and that he did not possess a weapon. To support these allegations, Pullen cites a portion of his trial testimony from his drug case and a "case summary," neither of which

-4-

he presented to the district court.  Apparently, Pullen also seeks to incorporate his affidavit filed in response to Vandertuin's motion for summary judgment.

The doctrine of qualified immunity shields officers from suit if the officers' actions were reasonable "in light of clearly established law and the information the . . . officers possessed." Anderson v. Creighton, 483 U.S. 635, 641 (1987). In the context of an excessive force claim, we must engage in an "objective" inquiry and "balance the amount of forced used against the need for that force with reference to clearly established law at the time of the conduct in question."  Colston v. Barnhart, 130 F.3d 96, 99 (5th Cir. 1997).  We look "to the totality of the circumstances, paying particular attention to whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest."  Stroik v. Ponseti, 35 F.3d 155, 158 (5th Cir. 1994).  Moreover, the Supreme Court has explained that we must not employ "the 20/20 vision of hindsight," but must instead consider the "fact that police officers are often forced to make split second judgments - - in circumstances that are tense, uncertain, and rapidly evolving - - about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 396-97 (1989).

Accepting Pullen's statements as true and assuming *arguendo* that we may properly consider the trial transcript and case

summary, we nevertheless find that Pullen has failed to raise a genuine issue of material fact as to whether Officer Vandertuin employed excessive force. Pullen does not dispute that: (1) he purchased illegal narcotics; (2) Vandertuin heard this transaction; (3) Vandertuin heard him instructing the C.I. to swallow or destroy evidence; (3) Vandertuin knew that a confidential informant and two children were in Pullen's car and; (4) an unidentified male approached Vandertuin as he attempted to handcuff Pullen. These facts establish that Vandertuin faced an unstable, dangerous situation, which posed a threat not only to himself but also to the C.I. and Pullen's children. Faced with such a situation, Vandertuin did not act unreasonably in throwing Pullen to the ground and standing on him in order to bring Pullen under control quickly and to ascertain the threat posed by the unidentified male. Accordingly, the district court did not commit error in entering summary judgment against Pullen's claim.

## III.

The judgment of the district court is AFFIRMED.