# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 29, 2025

Lyle W. Cayce
Clerk

No. 23-30553

Stephon Eric James,

*Plaintiff—Appellant*,

*versus*

Randy Smith, *Sheriff*; Daniel Fleischman; Doctor Gore, *Correct Health Head Physician*; Doctor Hamm, *Med Supervisor*; Rhonda Simmons, *in her official capacity as Assistant Warden*; Aaron Hines, *in his official capacity as a Deputy for the St. Tammany Parish Sheriff's Office*,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-2877

---

Before Elrod, *Chief Judge,* and King, and Graves, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:

Stephon Eric James alleges that while he was a pretrial detainee in the St. Tammany Parish Jail, the deliberate indifference of prison officials and medical staff led to a weeks-long delay in treatment that caused him substantial unnecessary pain around his prosthetic eye. James filed a pro se civil rights suit under 42 U.S.C. § 1983. After granting a motion to dismiss as to some defendants and a motion for summary judgment as to others, the

No. 23-30553

lower court entered final judgment against James. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

We (I) recount the (A) factual and (B) procedural history and then (II) outline the standard of review. We then (III) review for plain error (A) the grant of summary judgment for the Correct Health Doctor-Defendants and (B) the dismissal with prejudice of James' complaint against the St. Tammany Defendants, before (IV) quickly concluding.

I

A

In 2022, Stephon Eric James was a pretrial detainee in the St. Tammany Parish Jail in Covington, Louisiana. During his intake interview, James, who has had a prosthetic eye for decades, told the St. Tammany medical staff about his chronic condition.[1]

On June 1, 2022, Deputy Aaron Hines escorted James to a visit with Dr. Samuel Gore of Correct Health, who noticed James' eye was running and ordered (1) a lab workup, (2) a topical antibiotic to be used four times daily, and (3) wound care twice per week for an infection in his eye socket. The next day, Deputy Hines escorted James to the medical unit for the lab work Dr. Gore ordered. While there, James showed Nurse McKnight the infection building up behind his eye, they discussed his symptoms, and she allowed James to remove and clean his prosthetic eye. Nurse McKnight scheduled his first wound care visit for June 7, 2022.

On June 6, 2022, a nurse who observed James noticed that his face was swollen and ordered antibiotics for an eye infection. The day after, Deputy

---

[1] St. Tammany outsources its medical care functions to Correct Health Care Services.

Hines went to retrieve James for his first scheduled wound care appointment. But as James got up to go "to the bathroom . . . to wash [his] face and get dressed," he "heard the door slam." Deputy Hines did not return that day to take James to the wound care appointment.

James' infection worsened, and his face began to swell. James reported his infection and need for treatment to the nurses in the dorm who would dispense his other medications. James asked that they check about Dr. Gore's wound care order for him but James received no response. By June 12, the infection worsened, the antibiotics ran out, and James still had not received prescribed wound care.

James filed grievance after grievance, complaining that Hines refused to take him to his appointment and that he had not received his prescribed wound care. After James filed his third grievance in a couple of weeks on June 20, 2022, he was referred to Dr. Jose Ham.

On July 7, 2022, Dr. Ham deemed James' grievance "unfounded" because his medical records showed that he received treatment as ordered and the wound care order expired. Dr. Ham suggested that James submit a Request for Medical Services if he wanted a new treatment order. Instead, James requested a "Warden's Review," because he "never rec[ei]ved wound care" and "Hines lied" that he had.

The next day, James received the "Warden's Grievance Review and Response" from Warden Daniel Fleischman. Like Dr. Ham, Warden Fleischman deemed James' grievance "unfounded" and officially "closed" the grievance because James' medical records showed that he received his treatment as ordered, and that the treatment order expired on June 22, 2022. Fleischman also said that if James wanted to receive "further care," all he had to do was submit a Request for Medical Services.

No. 23-30553

James persisted; he requested a "Sheriff's Review" because "he had not been . . . to medical for any reason at all since the" June 1, 2022 order. A few days later, on July 13, 2022, James submitted a "Medical Complaint," alleging that someone falsified papers to make it look like he had received the wound care Dr. Gore ordered—even though James had remained in the dorm for over a month.

On July 19, 2022, James was summoned to the medical unit. There, Dr. Ham and Nurse McKnight told him that he had signed a form refusing medical services. At James' request, Dr. Ham retrieved the refusal form, and both he and Nurse McKnight were "surprised" to find that the undated refusal form, which lacked notes, only contained Deputy Hines' signature. Unbeknownst to James, Hines had prepared and signed a Medical Refusal Form for the June 7, 2022 appointment, but never mentioned the refusal form to James or tried to get his signature.

Dr. Ham and Nurse McKnight apologized for the "oversight" of not having verified whether James had signed the form, promised to get James the wound care ordered by Dr. Gore, and asked James to withdraw his grievance. James declined to withdraw.

Thereafter, Assistant Warden Rhonda Simmons summoned James to her office. Simmons reviewed the camera footage, otherwise investigated, and determined James' grievance was substantiated; she concluded that despite what his medical forms said, James had not been taken for wound care twice weekly as ordered by Dr. Gore. In fact, he had not been to medical for any reason for an entire month. When asked to drop the grievance again, James again declined because he "wanted to be sure that the infection would be taken care of."

By July 25, 2022, when James went to the medical unit to receive wound care for the first time, his infection had gotten worse, though the

4

Correct Health staff had not documented that fact. All the same, Dr. Ham and Nurse McKnight ordered antibiotic drops.

James e-mailed Assistant Warden Simmons three times between July 25–29, 2022. On July 29, James went to a medical wound care appointment and Nurse McKnight noticed that the infection was still visible. James still did not receive the antibiotics or the instrument to remove the prosthetic eye. When he managed to remove his eye without the instrument, his socket was full of thick yellow mucus, which he showed to Nurse McKnight. McKnight made an appointment for James to see the doctor on August 2.

On August 1, Assistant Warden Simmons informed James that his grievance had been forwarded to Sheriff Smith.

By the August 2 appointment, James could not remove the eye because of the swelling around it. However, Nurse Pritcher "tried to downplay it as something else," even though Pritcher "never removed the eye or even examined it up close because the infection was obvious." Nurse Pritcher ordered a round of wound care, and antibiotic ointment.

During his August 2 visit to the medical unit, unnamed nurses and medical staff apologized to James for the situation. Deputy Rhodes told James that Deputy Hines "refused to take [James] to medical and placed a fraud[ulent] refusal form in [James'] chart." Rhodes further said that Hines was "off sick/suspended" for two weeks and that "everyone was disappointed in his actions."

On August 10, 2022, James received the "Sheriff Review Decision" from Sheriff Randy Smith, which stated that his complaint was "founded in fact." The review concluded that the medical records  submitted by the medical staff during the grievance process were "not accurate" because the "wound care" entries "actually show[ed] dates and times [James] received

prescribed medication." Sheriff Smith explained that "[a]lthough [James] dispute[d] refusing medical services on June 7, 2022, Deputy Hines reported otherwise in a written Refusal to Submit to Treatment form." Smith concluded that James was being treated and that his complaint had been addressed and rectified.

B

Having exhausted the administrative procedures at St. Tammany, James turned to federal court and filed a complaint under 42 U.S.C. § 1983, seeking recompense for unnecessary pain, discomfort, distress, extreme anxiety, and his medical condition worsening. James' complaint named as defendants St. Tammany Parish Sheriff Randy Smith, Deputy Aaron Hines, Jail Warden Daniel Fleischman, Jail Assistant Warden Rhonda Simmons, Dr. Samuel Gore, and Dr. Jose Ham.

Dr. Gore and Dr. Ham filed a motion to dismiss James' claims, and attached James' medical records as an exhibit. They argued that James' medical records rebutted his allegations that they were deliberately indifferent. Because the Correct Health Doctor-Defendants attached medical records to their motion to dismiss, the Magistrate Judge converted it to a motion for summary judgment.

James filed a motion for appointment of counsel, which the Magistrate Judge denied. James then filed a motion to compel discovery on December 23, 2022, which the magistrate judge denied because James had not yet propounded the discovery requests on Defendants.

When James asked the Magistrate Judge to reconsider appointing him counsel, the Magistrate Judge once again denied the motion. James moved to amend the list of defendants named in his action to include medical staff whose full names were not available to him at the time of filing and asked the Magistrate Judge for permission to amend his petition after discovery was

received. This motion was also denied because it failed to respond to the arguments that Defendants raised in their motion and offered no new allegations.

The Magistrate Judge turned back to the converted motion for summary judgment and, on March 30, 2023, recommended that it should be granted.

On April 7, 2023, James filed a second motion to compel discovery. Therein, he averred that, on February 23, 2023, he served the attorneys for the St. Tammany Defendants and the Doctor-Defendants with requests for production of documents and interrogatories, but they had not responded in the allotted thirty days. The district court dismissed the motion as moot because James had "acknowledged he ha[d] received the discovery from Defendants."

James filed a third motion to compel discovery on May 19, 2023. He indicated that while "[t]he attorneys for Sheriff Randy Smith responded to the discovery request," they "directed most of the questions . . . to the attorneys for Correct Health and simply just found a way not to respond to others." They "were not responded to by the lawyers for Correct Health."

Within a week, the Magistrate Judge ordered that "Defendants file a response" to James' third motion to compel. In their response, the St. Tammany Defendants argued that the motion was largely targeted at the Doctor-Defendants, who were "dismissed defendants," and that insofar as the requests were targeted at the St. Tammany Defendants, they were answered sufficiently. James responded, insisting that they may have answered, but not sufficiently because Defendants did not disclose what he requested, i.e., the video, audio, and disciplinary records necessary to prove his point. The Magistrate Judge never ruled on this third motion to compel.

During these discovery disputes, the St. Tammany Defendants filed a motion to dismiss, that James opposed. The St. Tammany Defendants consented to proceed before the Magistrate Judge, who ultimately granted the motion to dismiss.

On July 20, 2023, the Magistrate Judge converted his report and recommendation to grant Dr. Ham and Dr. Gore's motion for summary to an order, and thereafter the Magistrate Judge entered judgment dismissing James' claims with prejudice against all defendants on July 30.

## II

"A judgment entered by 'a magistrate judge designated to exercise civil jurisdiction under § 636(c)(1)' is to be treated as a final judgment of the district court, appealable 'in the same manner as an appeal from any other judgment of a district court.'" *Roell v. Withrow*, 538 U.S. 580, 585 (2003) (modifications accepted) (quoting 28 U.S.C. § 636(c)(3)). "Hence, this court applies the same standard of review to the findings and conclusions of the magistrate that we would apply to a decision of the district court." *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987) (per curiam). "Conclusions of law made by the magistrate are therefore subject to *de novo* review by this court while findings of fact made by the magistrate are upheld unless such findings are clearly erroneous." *Id.* (citations omitted).

Accordingly, we typically review *de novo* both dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and grants of summary judgment under Rule 56. *See Fontana v. HOVG LLC*, 989 F.3d 338, 341 (5th Cir. 2021)); *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 173 (5th Cir. 1999).

However, "when the district court has not made an independent review of the record, failure to object to an issue in the [Magistrate Judge's Report and Recommendation], when warned of the requirement to file timely

No. 23-30553

objections, results in plain-error review applying to that issue when raised in our court." *Wallace v. Mississippi*, 43 F.4th 482, 494–95 (5th Cir. 2022) (internal citation omitted) (citations omitted).

### III

James asks us to review two decisions: (A) the grant of summary judgment for the Correct Health Doctor-Defendants and (B) the dismissal with prejudice of James' complaint against the St. Tammany Defendants.

"Under the plain-error standard, [James] must show for reversible plain error: (1) a forfeited error; (2) that was plain (clear or obvious error, rather than one subject to reasonable dispute); and (3) that affected his substantial rights." *Id.* at 496 (citations omitted). "And (4), if he makes that showing, we have the discretion to correct the reversible plain error, but generally should do so only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up).

### A

Any assignment of error that may exist is necessarily forfeited because there was no objection. That satisfies the first part of our fourfold test.

Next, we assess whether there is clear error. James' briefing can be boiled down to two alleged errors: (1) "the Magistrate Judge did not allow a full and fair opportunity for discovery before granting summary judgment," and (2) the Magistrate Judge inappropriately applied the summary judgment standard by failing "to liberally construe James's pro se complaint and draw all justifiable inferences in his favor" and ignoring issues of material fact.

### 1

"Summary judgment motions are normally resolved after the discovery process has concluded or sufficiently progressed." *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019). But "Rule 56 does not require

that any discovery take place before summary judgment can be granted." *Mendez v. Poitevent*, 823 F.3d 326, 336 (5th Cir. 2016) (citation and emphasis omitted).

"[U]nder Rule 56(d), deferring summary judgment and ordering discovery is appropriate only if the 'nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.'" *Id.* (quoting Fed. R. Civ. P. 56(d)). "A party 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.'" *Id.* (citation omitted).

James served multiple discovery requests and filed multiple motions to compel discovery. The Magistrate Judge denied James' first motion to compel discovery because he had not yet issued any discovery requests.

The other motions to compel were filed after the Magistrate Judge issued his March 30, 2023 "Report and Recommendation granting Dr. Gore and Dr. Ham's Motion." The Doctor-Defendants insist the later discovery requests were "rendered moot," explaining why the Magistrate Judge ordered "only the remaining defendants to respond to the Motion to Compel."

However, until the Report and Recommendation (R&R) was converted into an order on July 21, 2023, it was merely advisory. *United States v. Cooper*, 135 F.3d 960, 963 (5th Cir. 1998) ("The magistrate judge's report is nothing like a jury verdict or the oral disposition of a district judge, for the magistrate's role under § 636(b) is advisory, not adjudicatory. . . . In short, 'the magistrate has no authority to make a final and binding disposition.'" (quoting *United States v. Raddatz,* 447 U.S. 667, 673 (1980))).

No. 23-30553

Thus, when James filed motions to compel discovery on April 7, 2023, and May 19, 2023, the Doctor-Defendants remained parties to the suit.[2] They also remained party to the suit on May 11, 2023, when the Magistrate Judge ordered the "remaining Defendants" to respond to James' motion to compel.

The Magistrate Judge addressing the "remaining Defendants" suggests that the Magistrate Judge believed the Doctor-Defendants were no longer party to the suit as of his entering his R & R. But belief is not the law. Until the R & R was converted into a judgment, it was not "a final and binding disposition." *Cooper*, 135 F.3d at 963 (quoting *Raddatz*, 447 U.S. at 673). Treating it as such was plain error.

---

[2] The Doctor-Defendants never explicitly consented to proceed before the Magistrate Judge. We have long held that it is a jurisdictional error for a magistrate judge to enter judgment without having consent from the parties. *See EEOC v. West La. Health Servs., Inc.*, 959 F.2d 1277, 1282 (5th Cir. 1992); *see also* 28 U.S.C. § 636(c)(1).

However, the Supreme Court has explicitly held that "consent can be inferred from a party's conduct during litigation." *Roell*, 538 U.S. at 582. In *Roell*, the "party [] signaled consent to the magistrate judge's authority through actions rather than words," *id.* at 589, leading the Court to state that "the better rule is to accept implied consent where, as here, the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge." *Id.* at 590.

*Roell* would seem to apply with equal force here as to the Doctor-Defendants since they voluntarily appeared, "'without expressing any reservation' about doing so" and never "expressly declined to consent." *PNC Bank, Nat'l Ass'n v. Ruiz*, 989 F.3d 397, 400 (5th Cir. 2021) (quoting *Roell*, 538 U.S. at 586)). That said, it is unclear whether James' consent to continue before the Magistrate Judge applied to the claims against the Doctor-Defendants as well as the St. Tammany Defendants. Another complicating factor is the fact that James was acting pro se. Because we have already concluded that the Magistrate Judge committed plain error, and some questions remain unanswered that may be relevant to determining whether the Magistrate Judge had consent from the parties to enter judgment, we decline to address this issue further with the expectation that if any jurisdictional defect existed below, it will be resolved on remand.

That said, "[w]e reverse only if the decision affected a party's substantial rights. Substantial rights are affected if the district court's decision was arbitrary or clearly unreasonable." *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 891 (5th Cir. 2021) (cleaned up). Not addressing James' motions to compel discovery without any reasoning is arbitrary and thus affected his substantial rights.

Moreover, "[w]hen a party is not given a full and fair opportunity to discover information essential to its opposition to summary judgment, the limitation on discovery is reversible error." *Id.* at 892 (citation omitted). "The absence of documents for [James] is the very injustice of this case. Indigent prisoners are hampered in their access to the proof necessary to ward off summary judgment." *Murrell v. Bennett*, 615 F.2d 306, 310 (5th Cir. 1980).

James requested "any and all statements of all medical staff involved" and "the name of person responsible for filing and supervising staff of Correct Health," the names of those responsible for "investigation and determining inmate's health conditions and medical status after [doctor] has given orders for treatment," and any relevant documents and procedures for handling medical complaints and inmate grievances.

This requested discovery is relevant to both the objective and subjective inquiries of whether the Doctor-Defendants were deliberately indifferent. It can help James prove that the Doctor-Defendants had "responsibility for investigation and determining inmate's health conditions and medical status after [doctor] has given orders for treatment." The same is true of whether the "procedure in effect" availed James' complaints to the doctor. These are not mere "vague assertions that additional discovery will produce needed, but unspecified, facts." *Mendez*, 823 F.3d at 336. James is specifically targeting discovery on the very procedures at issue.

12

Much like in *Murell*, James "had no opportunity to provide . . . information because his unschooled attempts at requesting discovery were nipped in the bud." 615 F.2d at 310. The Magistrate Judge's denial, without even considering his requests based on the erroneous conclusion that the Doctor-Defendants were no longer parties to the suit, affected James' substantial rights. Accordingly, we use our discretion to correct the reversible plain error. *See Wallace*, 43 F.4th at 496.

2

Next, we address whether the Magistrate Judge plainly erred by failing to both liberally construe James' pro se complaint and draw all justifiable inferences in his favor. As noted, for James to show reversible plain error, he must show: (1) a forfeited error; (2) that was plain; and (3) that affected his substantial rights. *Wallace*, 43 F.4th at 496 (citations omitted). "And (4), if he makes that showing, we have the discretion to correct the reversible plain error, but generally should do so only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up) (citation omitted).

Any assignment of error that may exist is necessarily forfeited because there was no objection. That satisfies the first part of our fourfold test.

Second, we assess whether there is clear error. After reviewing the record, we are left with the definite and firm conviction that the Magistrate Judge committed clear error in finding there was no dispute of material fact.

The Magistrate Judge concluded that "the medical records rebut Plaintiff's allegations that [Doctor-]Defendants were deliberately indifferent to his medical needs." The R & R notes that the medical records reveal that on June 1, 2022, Plaintiff was seen in medical and given orders to self-clean his prosthetic eye/socket twice weekly, and on June 2, he self-cleaned his eye

and denied any pain or discomfort. The Magistrate Judge also found that James "received consistent medical treatment from providers."

There is no question that there are several entries of "wound care" during that period (June 3 (twice), 5, 8, 9, 11, 12, 13 (twice), 17, 18, 19, and 22). But when Assistant Warden Simmons reviewed the camera footage, she determined that "the medical record provided to the Warden . . . was *not accurate*." Simmons further concluded that the "record was erroneously titled 'Wound Care' by jail medical provider staff and purportedly showed dates and times throughout the month of June when services were performed . . . [it] actually shows dates and times you received prescribed medication from medical staff, not when you were taken to Jail Medical for wound care prescribed by Dr. Gore." As a result, the Sheriff determined his grievance was founded in fact. Based on the record, we agree.

The Magistrate Judge points to nothing in the record that undermines Simmons' reasonable determination. The logical inference from the record is that from June 2, 2022 through July 18, 2022, James was not brought to medical for the prescribed wound care even once. That is six weeks and five days without being brought to medical for wound care. This period followed Dr. Gore's June 1 order for "wound care twice a week" to "clean [James'] prosthetic eye/socket." That disputed fact is material because it demonstrates a lack of treatment that may undermine "[a] pretrial detainee's constitutional right to medical care." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000).

Dr. Ham may have given James antibiotics to treat his eye infection from June 20th through June 28th. But that does not change that James did not receive his prescribed wound care until weeks later. Nor does it change the fact that James had no treatment for his eye infection for eighteen days,

14

from June 2–20.[3] Insofar as the Doctor-Defendants argue that alternative treatment was sufficient, that is also a "dispute of fact [that] precludes summary judgment." *Schnell v. State Farm Lloyds*, 98 F.4th 150, 158 (5th Cir. 2024) (citation omitted).

The Magistrate Judge also stated that James "did not have any complaints regarding his eye at intake or anytime thereafter until his June 20, 2022 grievance." But the record shows the opposite.

James filed three grievances, the third of which was filed on June 20, 2022, so the Magistrate Judge finding he "did not have any complaints" is plainly incorrect. If the third complaint was June 20th, then presumably the others occurred between June 7, when Hines did not take him to the medical unit as prescribed, and June 20. Reading the evidence in the light most favorable to James, three complaints in just two weeks supports an inference that there was something wrong with James' eye. That inference is further supported by the fact that James has had this prosthetic eye for fifty-five years and is well-versed on what the symptoms of an infection are and avers he repeatedly asked nurses for help with the issue. This disputed fact is also material because it speaks to deliberate indifference. At minimum, these facts taken together demonstrate issues of material fact the Magistrate Judge overlooked in determining the facts that undergirded his recommendation; that is plain error.

So far, then, we have established a forfeited error that was plain. We turn to whether this error affected James' substantial rights, i.e., whether it

_____

[3] Based on James' version of the facts, we know that he at least went to medical on June 2, 2022, the day after the order—although that was for lab work, and he did not receive what the doctor prescribed at that time. The district court and some defendants make much of this, but in the scheme of weeks without care, this one-day difference is trivial, especially considering that James made that date allegation without the aid of discovery.

affected the outcome of the Magistrate Judge granting summary judgment. We conclude that it did.

"To establish liability based on a delay in medical treatment, a plaintiff must show deliberate indifference to serious medical needs that resulted in substantial harm." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (per curiam) (citation omitted). "A plaintiff can show deliberate indifference by showing that an official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (citation omitted).

There is no dispute that Dr. Gore knew of James' prosthetic eye and prescribed twice-weekly wound care. A reasonable juror could make the inference that as a doctor, Dr. Gore knew that infections of the eye socket or tissue surrounding the eye generally can be life-threatening if left untreated. "This should suffice to establish Dr. [Gore's] subjective knowledge of a substantial risk of serious harm."[4] *Ford v. Anderson Cnty., Tex.*, 102 F.4th 292, 308 (5th Cir. 2024) (per curiam).

As far as whether that lack of treatment was enough to constitute deliberate indifference, James has presented evidence that Dr. Gore "did not monitor or treat [his condition] *whatsoever*." *Id.* Accordingly, James has presented a factual dispute regarding whether Dr. Gore responded to his potentially life-threatening illness with deliberate indifference by failing to

---

[4] "[A] patient does not need to be experiencing an acute medical crisis requiring emergency intervention to be facing a substantial risk of serious harm—suffering from a known chronic issue that requires ongoing or long-term treatment may also suffice." *Ford v. Anderson Cnty., Tex.*, 102 F.4th 292, 308 n.6 (5th Cir. 2024) (first citing *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002); then *Delaughter v. Woodall*, 909 F.3d 130, 138–41 (5th Cir. 2018); and then *Dauzat v. Carter*, 670 F. App'x 297, 298 (5th Cir. 2016) (per curiam)).

provide *any* wound-care treatment for that six-week, five-day period. *Id.* at 308–09.

The Doctor-Defendants offer two responses. First, they say it is not their responsibility to monitor whether James' medical refusal form was accurate. But the record does not conclusively prove that is the case. James requested—and was denied—discovery about the Correct Health procedures and how they interact with St. Tammany's.

To satisfy the subjective standard, an "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. However, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *See Williams v. Hampton*, 797 F.3d 276, 288 (5th Cir. 2015) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). A reasonable juror, drawing inferences in James' favor, *could* find that because the risk was obvious, the Doctor-Defendants acted with deliberate indifference. Whether protocol dictates that the Doctor-Defendants be aware of James' multiple lodged complaints is material to this inquiry. That dispute of material fact makes summary judgment inappropriate.

Second, the Doctor-Defendants say that there is no evidence that Dr. Ham knew of James' injury whatsoever until July 19, 2022. At that point, Dr. Ham reviewed the medical refusal form, apologized for not noting that James' signature was missing, and promised to get him the ordered wound care. Three days later, and every week thereafter, James was escorted to medical for wound care.

We agree this does not evince indifference from Dr. Ham. However, it remains unclear from the underdeveloped record whether Dr. Ham knew,

or should have known, about the lack of medical care given to James before July 19th.

> To be sure, this Court has held that:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

> In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). But whether the failure here was merely inadvertent or negligent is contested and turns on the doctors' subjective knowledge. There is no evidence that rebuts James' claims—supported at least in part by record evidence—that medical staff Dr. Ham supervised entered notes saying James was given medical care he needed even though he never received it. This would evidence deliberate indifference to his serious medical needs.

In short, the Doctor-Defendants "had the burden of proving the nonexistence of material disputes." *Murrell*, 615 F.2d at 309. They failed to do so.[5] Yet the Magistrate Judge found they had and improperly shifted the

---

[5] Having concluded there is reversible error as to at least one of the Doctor-Defendants, we reverse the entire entry of summary judgment and remand for the district court to address the claims against both the Doctor-Defendants based on the record evidence. It has long been noted that appellate courts "review judgments, not statements in opinions." *Conwill v. Greenberg Traurig, L.L.P.*, 448 F. App'x 434, 438 (5th Cir. 2011)

No. 23-30553

burden to James. That error affected James' substantial rights because it "undermines confidence in the outcome" that summary judgment was appropriate. *See United States v. Guevara*, 408 F.3d 252, 263 (5th Cir. 2005).

Thus, it was plain error for the district court to grant summary judgment in the Doctor-Defendants' favor for this second, independent reason. Accordingly, we alternatively use our "discretion to correct the reversible plain error" because it "seriously affects the fairness . . . of judicial proceedings." *Wallace*, 43 F.4th at 496.

B

Next, we review whether the Magistrate Judge appropriately dismissed with prejudice James' complaint against the St. Tammany Defendants. We (1) outline the standard of review and address this question in two parts: (2) whether the dismissal was appropriate, and (3) if so, whether it was appropriate to dismiss with prejudice.

1

In reviewing a 12(b)(6) motion to dismiss for failure to state a claim, "we must accept all facts in the complaint as true, but do not accept conclusory allegations, unwarranted factual inferences, or legal conclusions." *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024) (citation omitted). "All well-pleaded facts are viewed in the light most favorable to the plaintiff." *Stapleton v. Lozano*, 125 F.4th 743, 748 (5th Cir. 2025) (citation omitted).

---

(per curiam) (quoting *Camreta v. Greene*, 563 U.S. 692, 704 (2011)); *accord United States v. Shirey*, 359 U.S. 255, 261 n.5 (1959) ("This Court reviews judgments, not arguments assailing them or seeking to sustain them.").

No. 23-30553

"Under the plain-error standard, [James] must show for reversible plain error: (1) a forfeited error; (2) that was plain (clear or obvious error, rather than one subject to reasonable dispute); and (3) that affected his substantial rights." *Wallace*, 43 F.4th at 496 (citations omitted).

2

The St. Tammany Defendants collective is made up of Sheriff Randy Smith, Warden Daniel Fleischman, Assistant Warden Rhonda Simmons, and Deputy Aaron Hines.

In his opening supplemental brief, James—who now has counsel—presses no arguments as to the liability of Sheriff Smith, Warden Fleischman, or Assistant Warden Simmons.[6] That leaves one remaining St. Tammany Defendant: Deputy Hines.

"[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (collecting authority). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Stapleton*, 125 F.4th at 749

---

[6] That suggests he does not wish to appeal the Magistrate Judge's decision as to those defendants. At minimum, he has forfeited those arguments. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by . . . failing to adequately brief the argument on appeal." (citing *Norris v. Causey*, 869 F.3d 360, 373 n.10 (5th Cir. 2017) (noting that a party forfeits an argument by failing to adequately brief it); and Fed. R. App. P. 28(a)(8)(A) (requiring appellant's argument to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies"))).

(modification accepted) (citation omitted). Hines does not question that James' condition is a serious medical need.

Instead, the debate centers on deliberate indifference and substantial harm. "To succeed on a deliberate-indifference claim, the plaintiff must show that the officer: (1) subjectively knew of a substantial risk of serious harm to the detainee; and (2) responded to that risk with deliberate indifference. The plaintiff must also demonstrate that substantial harm resulted from that conduct" *Id.* (cleaned up).

"To establish deliberate indifference predicated on a delay in medical treatment, [James] must show that the official refused to treat [him], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 711 (5th Cir. 2023), *cert. denied,* 144 S. Ct. 1010 (2024) (cleaned up).

We have previously "found a constitutional violation predicated on a failure to provide medical care or assistance where the officer deliberately broke with the standard course of treatment." *Id.* at 711. "In *Alderson*, a guard refused to provide prescribed antibiotics and painkillers for his broken ribs; in *Easter*, a nurse refused to provide an inmate's prescribed medication for heart attacks." *Id.* at 711–12 (footnotes omitted).

Here it is disputed whether Deputy Hines "deliberately broke" with protocol or "refused to provide" the appropriate, i.e., prescribed, treatment for James. James points to two critical facts. First, he points to what occurred when Hines came to escort him to the medically prescribed appointment. James says that before he could get up, get dressed, and wash his face, Hines slammed the door and walked away, and never returned. Second, that "[u]nbeknownst to James, Hines signed and filed a Refusal [of medical

services form] in James' medical records without attempting to obtain James's signature."

It is feasible that Hines is to blame for James not getting the wound care Dr. Gore prescribed. Hines submitted a form to the medical staff that represented that James refused treatment even though James did not sign the form and never verbally said he refused the treatment. A reasonable inference is that Hines deliberately intended to mislead the medical staff. After all, he signed the form with the knowledge it inaccurately said that James had refused service. This inference is further supported by the unrebuffed allegation that Deputy Rhodes stated that Hines was suspended for, and that "everyone was disappointed in[,] his actions." Put differently, James adduced enough facts to present a triable issue of fact on whether Hines was deliberately indifferent by submitting a false form to the medical staff and refusing to take James to treatment.

But to sufficiently state a claim that Hines was deliberately indifferent, James must also point to well-pleaded facts that Hines was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," "actually drew the inference," and "disregarded that risk by failing to take reasonable measures to abate it." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (cleaned up). This is the subjective prong of deliberate indifference.

In his briefing, James does not point to any facts that demonstrate Hines' subjective intent. Our review of the record unearths no evidence that Hines knew that James faced a substantial risk of serious harm. While we "liberally construe the complaint in favor of the plaintiff and assume that all facts pleaded in the complaint are true," *Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999), we will not "accept conclusory allegations, unwarranted factual inferences, or legal conclusions," *McKay*, 117 F.4th at 746 (citation

omitted). Simply put, there is not "sufficient factual matter" to warrant the inference that Hines knew that not taking James to the doctor would create a substantial risk of serious harm. Absent that, his claim cannot survive a motion to dismiss.

3

Having determined that dismissal as to James' deliberate indifference claim against Hines was appropriate, we home in on whether dismissal *with prejudice* was appropriate.

"When the dismissal of a pro se complaint is appropriate, it *should generally* be done without prejudice in order to allow the plaintiff an opportunity to file an amended complaint." *Alderson*, 848 F.3d at 423 (emphasis added) (citation omitted).

"However, a district court may dismiss with prejudice if the plaintiff has been given adequate opportunity to cure the inadequacies in his pleading or if the pleadings 'demonstrate that the plaintiff has pleaded his *best case*.'" *Id.* (first quoting *Jacquez v. Procunier*, 801 F.2d 789, 792–93 (5th Cir. 1986) (affirming dismissal with prejudice for failure to state a claim when plaintiff did not file a supplemental complaint but did file an extensive response to the defendants' motion to dismiss, alleging facts that suggested negligence but not deliberate indifference in a § 1983 action); and then citing *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (affirming dismissal with prejudice of § 1983 action brought by an inmate proceeding pro se and in forma pauperis who had no opportunity to amend his complaint but who was given a questionnaire to bring his claims into focus)).

Here, James was given no "opportunity to cure the inadequacies in his pleading." *Id.* Nor was he given a questionnaire to focus his claims. And the pleadings demonstrate that he has not pleaded his best case; James has not been able to plead crucial elements of a plausible deliberate indifference

claim because he lacked the necessary discovery. "With the benefit of more specific allegations, [James] may be able to state a claim." *Id.* at 423–24. Thus, "the general rule that dismissal should be without prejudice applies." *Id.* at 424.

## IV

We REVERSE the grant of summary judgment as to the Doctor-Defendants, AFFIRM in part the dismissal of James' claims against the St. Tammany Defendants for failure to state a claim, and REMAND with instructions to modify the dismissal to be without prejudice, and for further proceedings consistent with this opinion.